**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**CHARLES EDWARD ADKINS,**

      **Plaintiff,**

**vs.**                          **CIVIL ACTION NO. 3:16-CV-08606**

**NANCY A. BERRYHILL,[1]**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered September 7, 2016 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 15.)

The Plaintiff, Charles Edward Adkins (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits on September 16, 2013, alleging disability

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

since April 30, 2008 due to "COPD, [emphysema], and bronchitis".[2] (Tr. at 258.) His claims were initially denied on January 10, 2014 (Tr. at 139-144.) and again upon reconsideration on April 23, 2014. (Tr. at 149-155, 156-162.) Thereafter, Claimant filed a written request for hearing on May 6, 2014. (Tr. at 163-164.) An administrative hearing was held on February 18, 2015 before the Honorable Chris L. Gavras. (Tr. at 24-55.) By decision dated March 30, 2015, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 5-23.) On April 20, 2015, Claimant sought review by the Appeals Council of the ALJ's unfavorable decision (Tr. at 4.) The ALJ's decision became the final decision of the Commissioner on July 29, 2016 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-3.) On September 6, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

---

[2] In his Disability Report – Appeal, submitted on March 14, 2014, Claimant alleged that since his last Disability Report dated September 16, 2013, he has "blindness in the right eye that continues to deteriorate from a previous injury 15 years ago. I also have a lazy eye with correctional lenses that doesn't correct the vision or the lazy eye. . . I also was in Cabell Huntington Hospital for 10 days 10/2013 due to a blood clot in my left leg (calf), 2 blood clots in my chest, chest pain and couldn't breathe. . . ." (Tr. at 290.) Moreover, Claimant alleged that his "breathing has become worse, I can't walk far without being winded and shortness of breath, even with using my inhalers[.]" (Tr. at 291.) Claimant also alleged that he had appointment with "Prestera Center for Mental Health . . . for suicidal depression and anxiety . . . I have had these problems for 3 years because of homelessness and illnesses." (Id.)

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the

impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Those

sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional
> limitations is a complex and highly individualized process that requires us to
> consider multiple issues and all relevant evidence to obtain a longitudinal picture
> of your overall degree of functional limitation. We will consider all relevant and
> available clinical signs and laboratory findings, the effects of your symptoms, and
> how your functioning may be affected by factors including, but not limited to,
> chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent
> to which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such
> factors as the quality and level of your overall functional performance, any episodic
> limitations, the amount of supervision or assistance you require, and the settings in
> which you are able to function. See 12.00C through 12.00H of the Listing of
> Impairments in appendix 1 to this subpart for more information about the factors
> we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the
> degree of your functional limitation: Activities of daily living; social functioning;
> concentration, persistence, or pace; and episodes of decompensation. See 12.00C
> of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas
> (activities of daily living, social functioning; and concentration, persistence, or
> pace), we will use the following five-point scale: None, mild, moderate, marked,
> and extreme. When we rate the degree of limitation in the fourth functional area
> (episodes of decompensation), we will use the following four-point scale: None,
> one or two, three, four or more. The last point on each scale represents a degree of
> limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities

of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless

evidence indicates more than minimal limitation in the claimant's ability to do basic work

activities. <u>Id</u>. §§ 404.1520a(d)(1), 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. <u>Id</u>. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. <u>Id</u>. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

<u>Id</u>. §§ 404.1520a(e)(4), 416.920a(e)(4).

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2014. (Tr. at 10, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

gainful activity since April 30, 2008, the alleged onset date. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: chronic obstructive pulmonary disease (COPD); emphysema; multiple pulmonary emboli; chronic bronchitis; left upper lobe nodule; history of right lower extremity deep vein thrombosis; fatty liver disease; and major depressive disorder. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 11, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light work as defined in the Regulations

> except the claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ladders, ropes, scaffolds, ramps or stairs. The claimant must further avoid concentrated exposure to extreme cold and heat and even moderate exposure to fumes, odors, dusts, gases, pollen and poor ventilation. He is further limited to simple, routine tasks that do not involve more than occasional interaction with coworkers and supervisors. (Tr. at 12, Finding No. 5.)

At step four, the ALJ found that Claimant was incapable of performing any past relevant work. (Tr. at 16, Finding No. 6.) At the fifth step, the ALJ found that Claimant was 47 years old on the amended alleged onset date, making him a younger individual; that he had a limited education and could communicate in English; that the transferability of job skills was immaterial to the determination of disability; and that based on Claimant's RFC, age, education and work experience, there were other jobs that existed in significant numbers in the national economy that Claimant can perform. (Id., Finding Nos. 7-10.) On this basis, the ALJ determined Claimant was not under a disability from April 30, 2008 through the date of the decision. (Tr. at 18, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 47 years old on the alleged onset date, defined as a "younger person" by the Regulations, and then transitioned to an individual "closely approaching advanced age" at age 54 on the date last insured ("DLI") and at the time of the ALJ's decision. <u>See</u> 20 C.F.R. § 404.1563(c) and (d). (Tr. at 32.) Claimant completed the ninth grade, but did not obtain a GED. (<u>Id</u>.) Claimant last worked as a roofer; there were four years of substantial gainful activity during the fifteen year relevant time period. (Tr. at 32, 36.) He was homeless, and received assistance by the Harmony House with showers and laundry; he was staying at his cousin's house for the last two months before the hearing. (Tr. at 35-36.)

Issue on Appeal

Claimant argues that the ALJ's decision is not supported by substantial evidence because given his age, limited education and work experience, Rule 201.10 of the Medical-Vocational Rules would warrant a finding that he was disabled. (Document No. 12 at 5.)

The Relevant Evidence of Record[4]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Medical Records:

The first medical records during the relevant period are from August 16, 2013, when Claimant presented to the emergency room reporting chest pain. (Tr. at 379.) On examination, he had an irregular heart rhythm, but he otherwise exhibited normal findings. (Tr. at 379-380.) In particular, his respirations were normal, he had normal range of motion in the musculoskeletal system, and his neurological examination was normal. (Id.) Imaging of his chest showed COPD with overinflated lungs, but otherwise normal findings. (Tr. at 439.) He was assessed with pleuritic chest pain, and told to follow up with a primary care physician. (Tr. at 381.)

Claimant started treatment at Harmony House on August 20, 2013. (Tr. at 644.) Between September 6 and September 9, 2013, he was hospitalized for an exacerbation of COPD with hypotension and tachycardia. (Tr. at 347.) His respiratory status improved with treatment. (Id.) He was assessed with chest pain and nicotine dependence, counseled to stop smoking, and discharged with an oral steroid and inhalers. (Tr. at 345, 347.)

Later that month, Claimant established care with a primary care physician at Ebenezer

---

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Medical Outreach. (Tr. at 453.) He reported that he had not seen a regular primary care physician since childhood, and he took no medications regularly except for his inhalers, which appeared to be helping with his COPD. (Id.) He complained of chronic back pain. (Id.) On physical examination, Claimant had a scattered wheeze, but good air entry. (Tr. at 454.) His examination otherwise produced largely normal findings, including -5/5 strength in the extremities. (Id.)

On October 8, 2013, Claimant presented to the emergency room with complaints of right leg pain, worsening chest pain, and feeling poorly. (Tr. at 542.) His chest x-ray was consistent with COPD and a CT scan showed pulmonary emboli. (Tr. at 542, 626.) He was administered Coumadin and Lovenox. (Tr. at 514.) He was discharged on October 18 in stable condition with an albuterol inhaler, Symbicort, and instructions to follow up with Ebenezer clinic. (Tr. at 513-514, 626.)

The following month, on November 26, 2013, Claimant presented to Mary Adams, NP, for medication refills. (Tr. at 645.) He was off his Coumadin and in no acute distress. (Id.) His physical examination was unremarkable except for nasal discharge. (Id.) He followed up with Nurse Adams on December 3, 2013, when he had an upper respiratory infection. (Tr. at 647.)

On December 23, 2013, Claimant presented to DDS examiner Deidre Parsley, D.O. for a consultative physical examination. (Tr. at 626.) He reported symptoms of nighttime dyspnea, productive cough, and daily wheezing, but he did not use supplemental oxygen. (Tr. at 627.) On examination, his left eye was observed to drift laterally. (Tr. at 628.) He had diminished and interstitial breath sounds throughout, difficulty standing on left leg due to balance, and had 20/40 vision in the left eye. (Tr. at 629.) Otherwise, the remainder of his examination produced unremarkable findings including that he had normal gait, did not require a handheld device, and was able to hear and understand conversational voices without difficulty. (Tr. at 627-630.)

Dr. Parsley diagnosed Claimant with emphysema, multiple pulmonary emboli, left upper lung nodule, history right lower extremity deep vein thrombosis, fatty liver disease, chronic nicotine dependence and elevated blood pressure. (Tr. at 630.) She noted that Claimant's spirometry testing was consistent with moderate COPD. (Tr. at 632.)

Dr. Parsley opined that Claimant had no impairment standing, walking or sitting during the exam. (Tr. at 631.) She further opined that he was able to squat, stoop and bend occasionally due to his lung condition. (Id.) She also opined that Claimant would be able to occasionally lift, carry, push and pull heavy objects; had no gripping or handling limitations; only mild vision impairment; and had no impairment in hearing, speaking, or traveling. (Id.)

On January 4, 2014, state agency physician Dominic Gaziano, M.D., reviewed Claimant's records and opined that Claimant could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; push/pull an unlimited amount, and stand and/or walk as well as sit about 6 hours in an 8-hour workday. (Tr. at 93-95.) He further assessed that Claimant had occasional postural limitations, and no manipulative, visual, or communicative limitations. (Tr. at 94.) Finally, he assessed that Claimant should avoid concentrated exposure to extreme cold and heat and moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. at 95.)

Claimant returned to Nurse Adams on February 24, 2014, seeking medication refills. (Tr. at 649.) He admitted that he was still smoking; he had a normal physical examination, including normal heart rate, clear lungs, and no edema. (Id.) Nurse Adams started Claimant on medication for acid reflux, continued his other medications, and instructed him to follow up in two-to-three months, or as needed. (Tr. at 650.)

On April 23, 2014, state agency physician Thomas Lauderman, D.O., reviewed Claimant's

records and reached the same conclusions as Dr. Gaziano: that Claimant could perform light work, with certain postural and environmental limitations. (Tr. at 117-119.)

Claimant's earnings:

Claimant earned $3,555.00 in 2000, $9,636.75 in 2001, $4,820.00 in 2002, $4,022.38 in 2003, $8,406.30 in 2004, $10,187.48 in 2005, $13,901.25 in 2006, $11,957.57 in 2009, and $4,832 in 2008. (Tr. at 69-71.) Despite alleging disability onset in 2008, Claimant had reported earnings over $4,800 in 2012 and worked from June 2012 to February 2013. (Tr. at 69, 259, 267.)

The Administrative Hearing

Claimant Testimony:

Claimant testified that he was previously homeless, but currently living with his cousin (Tr. at 35-36.) He had a medical card receives food stamps (Tr. at 41.); he still smoked, but "cut way down". (Tr. at 38.) The last job he performed was a roofing position, which was heavy work. (Tr. at 36.) He alleged he could only walk about a block before having to sit down because he cannot get his breath. (Tr. at 38.) He testified that he could no longer climb ladders. (Id.) He also stated that he had trouble hearing on the right side, and that he had vision problems that required him to wear glasses. (Tr. at 39, 42.) He had a driver's license, without restriction except for the need to wear his glasses, and he drove a car. (Tr. at 41, 42.) He stated that he alleged disability starting on April 30, 2008, because he could not go on roofs and carry shingles as of that date. (Tr. at 43-44.)

When asked if treatment for his respiratory problems controlled his symptoms, Claimant answered that ProAir helped a little and that Subreva helped "big time". (Tr. at 45.) However, Claimant explained that his relief from medications was not one hundred percent, that he still has

problems everyday and that if he had to climb steps, he had to stop and sit down to get his breath. (Tr. at 49.)

The ALJ asked Claimant if he had treatment between 2008 and 2013, and Claimant responded that he went to Little River Medical Center for the Homeless in South Carolina. (Tr. at 45.) The ALJ agreed to hold the record open thirty days or as long as necessary so that Claimant's counsel could obtain and submit records from that location.[5] (Tr. at 45, 54.)

Claimant's Challenges to the Commissioner's Decision

Claimant argues he would "grid out" due to the following factors: his age (closely approaching advanced age as of DLI); his limited education; his prior work experience (skilled and very heavy to heavy as performed); his credible testimony about his pain and fatigue; the VE's failure to opine as to the transferability of his skills; and the findings from the consultative physical examination. (Document No. 12 at 5.) Claimant further argues that those aforementioned factors precluded employment, and at best, would limit him to sedentary level work. (Id. at 5-6.) Moreover, the ALJ's noting Claimant's conservative treatment was more a product of his homelessness and impoverishment, than it was related to his impairments. (Id. at 6.) Claimant asks for reversal of the ALJ's decision and awarded benefits, or alternatively, a remand for correction of these errors. (Id. at 6-7.)

The Commissioner responds that Claimant was not disabled under the Medical-Vocational Guidelines because the substantial evidence supported that he could perform light exertional level work and further, the ALJ's credibility analysis is supported by substantial evidence. (Document No. 15 at 8-9.) The ALJ noted that there were no medical opinions that Claimant was disabled or

---

[5] The undersigned notes that no additional records were submitted after the hearing or to the Appeals Council.

only capable of work at the sedentary level; despite Claimant's argument that the consultative examiner found his impairments precluded walking or standing for six hours out of an eight hour workday, the examiner actually found he had no impairment in this area. (Id. at 9-10.)

Moreover, the ALJ's finding Claimant had conservative treatment for his impairments was supported by substantial evidence, despite his alleged onset date in 2008, treatment did not begin until 2013, and the objective evidence indicated his impairments were unremarkable. (Id. at 10-12.) With respect to Claimant's financial condition, the ALJ properly considered Claimant's lack of earnings years prior to his onset date showed other factors beyond his impairments that impacted his employment. (Id. at 12.) Claimant also possessed a medical card and had a referral to a public clinic for services through the Harmony House. (Id. at 12-13.) In addition, Claimant could still afford his cigarette habit, in spite of his argument that he could not afford treatment. (Id. at 13.)

Finally, the Commissioner contends that Claimant's argument essentially requests this Court to impermissibly reweigh the evidence, and that it is not clear that Grid Rule 201.10 is applicable, as the ALJ found the transferability of Claimant's work skills immaterial to his determination. (Id. at 14-15.) The Commissioner asks the Court to affirm the decision. (Id. at 15.)

Analysis

The Grid Rules and RFC Findings:

At steps four and five of the sequential analysis, the Regulations mandate that an ALJ must determine a claimant's RFC for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider a claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R.

§§ 404.1545, 416.945. "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Claimant contends that Rule 201.10[6] applies in his case, and directs a finding that he is "disabled". The ALJ explicitly found that Rules 202.11[7] and 202.18 directed findings of "not disabled" because Claimant had the RFC to perform the full range of light work. (Tr. at 17.) Indeed, the ALJ noted "there are no medical or psychological opinions containing greater limitations than those contained in the [RFC]." (Tr. at 13, 15, 16, 17.) Further, despite the omission of the vocational expert's opinion as to whether Claimant's prior work skills were transferable, the ALJ specifically found that transferability of skills was immaterial to the determination of disability because of the aforementioned Medical-Vocational Rules. (Tr. at 17.) In short, there is simply no evidence that Claimant was limited to sedentary work as a result of his impairments, that the transferability of his past relevant work skills were an issue in the ALJ's decision, therefore, his argument that he would "grid out" pursuant to Rule 201.10 lacks merit. The undersigned finds that the ALJ's finding that Rules 202.11 or 202.18 directed a finding of "not disabled" is supported by substantial evidence.

---

[6] If a claimant had the RFC to perform sedentary work, a finding of "disabled" would be directed by Medical-Vocational Rule 201.10 where the claimant was "closely approaching advanced age", had a limited education or less, had prior work experience that was skilled or semiskilled and that the skills were not transferable. See, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1.
[7] Rules 202.11 and 202.18 direct a finding of "not disabled" where Claimant was "closely approaching advance age" or a "younger individual", had a limited education or less, had prior work experience that was skilled or semiskilled and that the skills were not transferable. Id. at Table No. 2.

Credibility, Pain and Fatigue:

Social Security Ruling 96-7p[8] clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements. See, also, Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Claimant argues that his testimony regarding his pain and fatigue because of his breathing impairment and deep vein thrombosis was credible, thus precluding his capability of employment. As an initial matter, it is well known that credibility determinations are properly within the

---

[8] The undersigned is aware that this Ruling has been superseded by SSR 16-3p, effective March 28, 2016, however, the former Ruling applies to the ALJ's decision herein, having been issued on March 30, 2015. See, SSR 16-3p, 2016 WL 1131509.

province of the adjudicator and beyond the scope of judicial review. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Davis v. Colvin, 3:13-CV-23399, 2015 WL 5686896, at *7 (S.D.W. Va. Sept. 8, 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.") After properly performing the two-step process[9], the ALJ proceeded to review the evidence of record and reconciled it with Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms (Tr. at 13.): first, the ALJ noted that Claimant's "meager earnings record detracts from his credibility" which indicated matters other than his impairments prevented him from working (Id.); then the ALJ acknowledged that Claimant had "conservative" treatment for his impairments, that findings from physical examinations were "largely unremarkable", and importantly, despite alleging an onset date in 2008, the first medical records during the relevant period are from August 2013 (Id.); the ALJ also noted Claimant's testimony that he was not taking medication and did not have a primary care physician since childhood (Id.); moreover, though the ALJ held the record open to receive additional hospital records, none were received (Id.); and finally, as mentioned above, the ALJ noted that "there are no medical or psychological opinions containing greater limitations than those contained in the [RFC]." (Id.)

In addition to his review of the medical records, described more thoroughly *supra*, the ALJ discussed Claimant's his physical impairments and how they affected his ability to function. For instance, the ALJ noted that Dr. Parsley "opined that the claimant would have no impairment standing, walking or sitting." (Tr. at 14.) Nevertheless, due to Claimant's "treatment for his liver, lung and cardiovascular conditions, and these conditions could reasonably result in fatigue and

---

[9] See, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

shortness of breath on exertion[,]" the ALJ noted "the postural and exertional limitations are reasonable" however, the ALJ acknowledged further that Claimant's "right leg pain from his pulmonary embolism and continued Coumadin therapy (Exhibit 9F)[10] indicate at least some standing and walking limitations." (Id.) Notably, however, the ALJ also observed Claimant "had been off Coumadin" for a while, continued on his COPD medication, and by February 2014, had a normal physical exam; Claimant was to follow up in three months, "which suggests that his chronic conditions were stable". (Tr. at 15.)

With regard to Claimant's conclusory contention that his major depressive disorder prevented him from working, once again, the ALJ noted psychiatric evaluation evidence was "largely unremarkable" and that "[w]hile the claimant did have some depressive symptoms that resulted in vocational limitations, the largely unremarkable mental status exams during this time show that the claimant is no more impaired than the above [RFC] indicates." (Id.) Additionally, the ALJ noted that the medical records showed Claimant had some vocational limitations as a result of his "lung conditions, fatty liver disease, venous impairments and depression", and that specifically, "his deep vein thrombosis and the fatigue from his fatty liver and lung impairments limit him to a range of light work." (Id.) Overall, the ALJ found that the state agency consultants' opinions supported the ALJ's findings with respect to Claimant's physical and mental impairments, and again, that "there are no other medical opinions in the record that opine to greater limitations than those contained in the above [RFC]". (Id.)

---

[10] The Court Transcript Index provides that this Exhibit are progress notes dated August 20, 2013 to February 24, 2014 from Harmony House. (Tr. at 639-650.)

In sum, the ALJ provided ample and reasonable explanation for his credibility, pain and symptom analysis and the undersigned finds that the ALJ's findings and conclusions for same are supported by substantial evidence.

<u>Duty to Weigh the Evidence:</u>

With respect to Claimant's homelessness and impoverishment as reasons for his conservative treatment, the Commissioner points out that Claimant testified to having a medical card and had been referred to treatment at facilities that catered to homeless persons, but he also managed to support his cigarette habit. (Document No. 15 at 12-13.) Most importantly, however, the ALJ expressly found on several occasions in his written decision, that no medical opinion evidence or objective medical evidence supported a finding that Claimant was disabled, despite his financial condition. The Fourth Circuit has made it explicitly clear that judicial review does not extend to reweighing the evidence or to making credibility determinations in evaluating whether a decision is supported by substantial evidence. See <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). In short, Claimant's argument for reversal is akin to requesting the Court to reweigh the evidence, as reasonable minds might reach different conclusions that Claimant is disabled, however, the undersigned finds that the ALJ applied the correct law in reaching his decision, and ultimately, the decision was supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), and **AFFIRM** the final decision of the Commissioner.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: February 21, 2017.

Omar J. Aboulhosn
United States Magistrate Judge

19